UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS B.D.S.,<br><br>   Petitioner,<br><br>  v.<br><br>WARDEN OF THE MESA VERDE DETENTION FACILITY, et al.,<br><br>   Respondents. | No. 1:25-cv-02032-TLN-CSK<br><br>**ORDER** |

  This matter is before the Court on Petitioner Marcos B.D.S.'s ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  On December 30, 2025, the Court ordered Respondents Warden of the Mesa Verde Detention Facility and Current or Acting Field Office Director, San Francisco Field Office, United States Immigration and Customs Enforcement; Director, United States Immigration and Customs Enforcement; Secretary, United States Department of Homeland Security; and United States Attorney General (collectively "Respondents") to submit a response to Petitioner's request for immediate injunctive relief.  (ECF No. 5.)  On January 5, 2026, Respondents filed a response.  (ECF No. 6.)  On December 22, 2025, Petitioner filed a traverse. (ECF No. 9.)  For the reasons set forth below, Petitioner's petition is GRANTED.

  **I. FACTUAL AND PROCEDURAL BACKGROUND**

  Petitioner is a native and citizen of Brazil.  (ECF No. 6-1 at 4.)  Petitioner entered the United States on or about June 8, 2024.  (*Id.*)  Petitioner left his home country after experiencing

1

1  persecution for being a member of the LGBTQ+ community, including his father being killed due
2  to Petitioner's sexual identity. (ECF No. 9 at 2.)

3  After arriving to the United States, an asylum officer determined Petitioner had raised a
4  credible fear of persecution or torture if returned to Brazil. (ECF No. 6-1 at 4.) Petitioner was
5  then placed in standard removal proceedings under 8 U.S.C. § 1229a, issued a Notice to Appear,
6  and paroled into the United States beginning July 17, 2024. (*Id.* at 2–4.)

7  Petitioner was detained on or about September 22, 2025. (*Id.* at 8.) He was detained
8  without an individualized assessment or bond hearing. (ECF No. 9 at 2.) Petitioner has remained
9  in detention for over three months at the Mesa Verde Detention Facility in Bakersfield. (*Id.*)

10  On December 29, 2025, Petitioner filed a petition for writ of habeas corpus challenging
11  his detention as violating his due process rights. (ECF No. 1.) The Court issued an order
12  directing Respondents to file a response to Petitioner's request for injunctive relief. (ECF No. 5.)

13  **II.    STANDARD OF LAW**

14  The Constitution guarantees the availability of the writ of habeas corpus "to every
15  individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)
16  (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in
17  custody upon the legality of that custody, and . . . the traditional function of the writ is to secure
18  release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas
19  corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the
20  Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has
21  served as a means of reviewing the legality of Executive detention, and it is in that context that its
22  protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a
23  district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*
24  *Davis*, 533 U.S. 678, 687 (2001).

25  **III.   ANALYSIS**

26  In his habeas petition, Petitioner's singular claim for relief asserts that his continued
27  detention without a hearing violates his due process rights. (ECF No. 1 at 16–17.) Though the
28  parties raise a variety of arguments in their subsequent filings, the Court limits its analysis to

1   those related to Petitioner's due process claim.[1]

2   The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty

---

[1] Respondents' opposition claims Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1), Petitioner's substantive due process claim fails because his detention is not indefinite, and Petitioner's procedural due process claim fails because he is not entitled to a bond hearing. (ECF No. 6 at 3–8.) In addition to discussing his due process claim, Petitioner's traverse also argues he is not an "applicant for admission" or subject to mandatory detention and instead falls under 8 U.S.C. § 1226(a), Respondents' revocation of parole without notice was arbitrary and capricious in violation of the Administrative Procedure Act, Petitioner is likely to suffer irreparable harm, and the balance of equities and the public interest favor his release. (ECF No. 9 at 3–14.)

interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, the Court finds Petitioner developed "enduring attachments of normal life" during his conditional release as described in *Morrissey*, 408 U.S. at 482.  Prior to re-detention, Petitioner lived in the United States for approximately one year and two months.  (ECF No. 9 at 9.)  During that time, he was gainfully employed as a painter, met and began a relationship with his boyfriend, and pursued his application for asylum relief.  (*Id.*)  He complied with the terms of his parole and did not engage in any criminal activity.  (*Id.*)  For these reasons, the Court finds Petitioner's prior release from immigration custody creates a substantial liberty interest protected by the Fifth Amendment.  *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(1) does not change this Court's analysis.  Section 1225(b)(1) provides a process for detention and expedited removal of certain "aliens arriving in the United States and certain other aliens who have not been admitted or *paroled*." 8 U.S.C. 1225(b)(1) (emphasis added).  The statute's scope is defined as follows:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or *paroled* into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II) (emphasis added).  Here, Petitioner was paroled into the United States on July 17, 2024, and remained on parole until his challenged re-detention.  (ECF No. 6-1 at 2.)  Respondents' argument that § 1225(b)(1) expedited removal procedures apply to Petitioner thus fails and does not alter the Court's analysis of Petitioner's liberty interest.[2]

---

[2] Having found Petitioner is not subject to 8 U.S.C. § 1225(b)(1), the Court agrees with Petitioner that he is instead subject to 8 U.S.C. § 1226(a) and entitled to the process that statute

4

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor – Petitioner's private interest – as discussed above, Petitioner has been out of custody since July of 2025. (ECF No. 6-1 at 2.) In that time, Petitioner secured gainful employment, met and entered a relationship with his boyfriend, and made a life in Pinole, California. (ECF No. 9 at 9.) The time Petitioner has spent in the United States, as well as his established relationships, create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the risk here be considerable. The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). This is particularly so where, as here, Petitioner has no criminal history and has complied with all conditions of his parole. (ECF No. 9 at 11); *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

---

demands. (ECF No. 9 at 3.) However, because Petitioner's habeas petition only claims a constitutional violation, the Court need not discuss a potential statutory violation.

1       As to the third *Mathews* factor, the government's interest in detaining Petitioner without a
2   hearing before a neutral decisionmaker is negligible.  *R.D.T.M.*, 2025 WL 2686866 at *6.
3   Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the
4   government's interest is further diminished here where Petitioner was already found appropriate
5   for release on parole, has complied with the conditions of that parole, has no criminal history.
6   (ECF No. 9 at 11.)  "The government has no legitimate interest in detaining individuals who have
7   been determined not to be a danger to the community and whose appearance at future
8   immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions.").
9   *Hernandez*, 872 F.3d at 994.

10      The Court therefore finds Petitioner's re-detention without a hearing violate due process.
11  The Court GRANTS Petitioner's petition.  (ECF No. 1).

12  **IV.    CONCLUSION**

13      IT IS HEREBY ORDERED:

14      1.      Petitioner's petition for writ of habeas corpus (ECF No. 1) is GRANTED;

15      2.      Respondents must IMMEDIATELY RELEASE Petitioner Marcos B.D.S. from
16  custody.  Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless
17  they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a
18  neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his
19  physical custody is legally justified.

20      3.      The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

21      IT IS SO ORDERED.

22  Date: January 12, 2026

24  TROY L. NUNLEY
    CHIEF UNITED STATES DISTRICT JUDGE